UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-320-GWU

LINDA LAYNE,     PLAINTIFF,

VS.     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

|   |   |
|---|---|
|   | Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921. |
| 4. | Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d). |
| 5. | Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a). |
| 6. | Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e). |
| 7. | Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1). |

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

07-320  Linda Layne

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Linda Layne, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of mild diffuse disc bulging at L1-L5, with a small annular tear at L4-5, and a "history" of cervical strain, lumbar strain/sprain syndrome, lumbago, bronchitis, diffuse duodenitis, erosive esophagitis and cholecystitis, status post laparoscopic cholycystectomy. (Tr. 19). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Layne retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 22-5). The Appeals Council declined to review, and this action followed.

At the most recent administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, with a sit/stand option, and additionally had the following non-exertional restrictions. (Tr. 859-60). She: (1) could not climb

ladders, ropes, or scaffolds or crawl; (2) could occasionally bend, stoop, or operate foot or hand controls; (3) could not tolerate any exposure to temperature extremes or pulmonary irritants; and (4) was restricted to performing simple, one- and two-step instructions in an object-focused work environment with no more than occasional superficial interaction with other persons. (Tr. 860-1). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. Layne alleged disability due to low back and neck pain resulting from a motor vehicle accident in March, 2004. (Tr. 88). She also described having stress which gave her headaches. (Tr. 845). She had been recently placed on an anxiety medication to take as needed and testified that she took half a tablet about three times a week. (Tr. 848-50). She had also been prescribed the medication Lortab for pain, but only took it once or twice a week, due to worries about addiction. (Tr. 850, 858). She used a TENS unit for pain twice a week. (Tr. 846-7).

Medical evidence in the transcript shows that Mrs. Layne began seeing a chiropractor for back pain shortly after her motor vehicle accident, and this source obtained an MRI showing diffuse bulges with no stenosis and normal lumbar

lordosis.  (Tr. 416, 727).  She sought treatment from an orthopedic surgeon, Dr. Ronald S. Dubin, for complaints primarily of lower back pain, although she also related having some problems with her cervical spine.  (Tr. 438).  Dr. Dubin found tenderness upon examination and a reduced range of motion, but there were no motor, sensory, or reflex abnormalities.  (Id.).  He read the MRI report as being "negative," and also reviewed x-rays which were negative for fractures or dislocations.  (Id.).  On the other hand, x-rays of the cervical spine showed "considerable straightening," consistent with muscle spasm.  His impression was that the plaintiff had muscle strain in both the cervical and lumbar spine, and a herniated disc should be ruled out in the cervical spine.  He prescribed physical therapy and provided the plaintiff with a work excuse for three weeks.  (Id.).  By June 10, 2004, the plaintiff was still complaining of low back pain radiating down the lower extremities, despite "extensive" physical therapy, and Dr. Dubin concluded he did not have much more to offer.  (Tr. 436).  He noted that Mrs. Layne reported she could not sit for long periods of time, which was required in her current job, and opined that she could not return to work for the next six weeks.  (Id.).  On June 17, 2004, the plaintiff was complaining of cervical spine and left arm pain, and objective testing showed marked weakness in the left upper extremity with diminished reflexes.  (Tr. 614, 738).  On July 6, 2004, following a "normal" MRI of the cervical spine (TR. 612-13), Dr. Dubin concluded that his patient was at maximum medical

improvement, given her MRI and x-ray results, he felt that her pain pattern was a result of a "soft tissue injury." (Tr. 611). He restricted her from "repetitive" bending, stooping, lifting, or crawling, or use of the neck or upper extremities. He opined that she would be restricted from any occupation "other than most sedentary occupations, which would be more of a desk job responsibility." (Tr. 611, 737). The plaintiff made one more visit to this source on January 5, 2006, at which time she was still complaining of pain in her low back and shoulders. (Tr. 778). Dr. Dubin did not feel there was any more that he could offer, given that the accident was nearly two years earlier, and declined to provide long-term pain medication. (Id.).[1] No specific functional restrictions are given.

Mrs. Layne was examined on one occasion by a neurosurgeon, Dr. Greg Wheeler, in November, 2004. His examination showed a normal range of motion of the neck with no spasm, a normal range of motion of the lumbar spine with no tenderness or spasm, normal sensation and reflexes, and a negative Spurling's test. (Tr. 461, 729). He reviewed prior records, and concluded that the MRI showed a small annular tear at L5-S1. However, the tear was actually on the right side, and did not correspond to the plaintiff's symptoms on the left side. (Id.). He concluded

---

[1]Dr. Dubin also reported that the plaintiff inquired as to what was causing her radicular low back pain and was told that "we did not do an MRI scan of her lumbar scan (sic) because of her claustrophobia . . . ." (Tr. 778). In view of the fact that Dr. Dubin at least had a lumbar MRI previously available for review, the meaning of this comment is unclear, unless the patient had declined to have another MRI done at his direction.

that the plaintiff did not need any further treatment or surgery, and recommended that she get back to "normal activity." (Id.).  He did not see any evidence that she should not be able to "at least try to return to work." (Id.).

The plaintiff also submitted office notes from her family physician, Dr. Shawn Fugate.  The office notes show treatment for a variety of transient conditions such as ear infections and bronchitis, and also reflect treatment for abdominal pain which was eventually addressed by gallbladder surgery in 2005.  (Tr. 466, 472, 549, 598, 741, 794).  Some of the office notes refer to lumbar disc disease with radiculopathy and shoulder pain, but there are essentially no objective findings listed.  (E.g., Tr. 465, 596).  In June, 2006, Dr. Fugate submitted a medical assessment form limiting Mrs. Layne to lifting less than ten pounds occasionally and frequently, standing or walking less than two hours in an eight-hour day (no more than five minutes without interruption), sitting about four hours in an eight-hour day (no more than twenty minutes without interruption), having a need to alternate sitting and standing at will, and "never" performing any postural activities, having a limited ability to reach, push, and pull and, in addition, opined that she would need to lie down two or three times during every work shift.  (Tr. 800-1).  He justified these restrictions by citing chronic back pain with lumbosacral strain and "orthopedist opinion."  The ALJ rejected Dr. Dubin's limitation to sedentary level work due to the lack of significant discogenic or degenerative conditions shown on radiological studies and because clinical

07-320 Linda Layne

examinations were "essentially benign." He also rejected Dr. Fugate's restrictions because they were not supported by clinical or diagnostic findings. (Tr. 23-4). However, he also declined to accept opinions by state agency reviewing sources that Mrs. Layne's complaints should resolve to less than "severe" status within 12 months of her accident. (Tr. 529-30).

      The plaintiff argues on appeal that the opinions of Drs. Dubin and Fugate were entitled to controlling weight since they were both treating sources. However, the opinion of even a treating source must be supported by objective findings if it is to be given controlling weight. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). In the present case, the court notes that Dr. Dubin actually referred to the plaintiff being restricted to occupations other than "most" sedentary jobs, which is somewhat ambiguous. In any case, Dr. Dubin apparently concluded that the plaintiff's cervical and lumbar MRIs were essentially within normal limits and that her x-rays showed only degenerative disc disease. His statement that the plaintiff's pain was a result of a "soft tissue injury" could reasonably be interpreted to mean that there was no underlying condition responsible for the problem. At best, the physician's restrictions would appear to have a minimal basis in objective findings. This is even more true of Dr. Fugate, who never listed any objective findings and who also apparently based his opinion on that of Dr. Dubin, at least in part. (Tr. 800). A treating source who cites the opinion of another doctor is not basing his

12

07-320  Linda Layne

opinion on medically acceptable clinical and laboratory diagnostic techniques as required by 20 C.F.R. § 404.1527(d)(2).  Accordingly, under the circumstances of this case, substantial evidence supports the ALJ's rejections of the treating physician opinions and the ALJ's decision gives "good reasons" for doing so, thus meeting the procedural requirements of <u>Wilson v. Commissioner of Social Security</u>, 378 F.3d 541 (6th Cir. 2004).  The ALJ appears to have given the plaintiff the benefit of considerable doubt in finding the restrictions that he did.

The decision will be affirmed.

This the 11th day of June, 2008.

Signed By:
<u>G. Wix Unthank</u>
**United States Senior Judge**